IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DORA ADKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:08cv91 (JCC) |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss.  For the following reasons, the Court will grant the Motion.

### I. Background

Plaintiff Dora Adkins ("Plaintiff") was an employee of Defendant Fairfax County School Board (the "School Board") from 1975 until she was fired on June 22, 2007.  In December 1996, Plaintiff was injured in a work-related automobile accident that rendered her disabled.  Since that time, Plaintiff and the School Board have been embroiled in litigation regarding her disability, including three prior lawsuits involving Americans with Disabilities Act ("ADA") claims.  For example, in July 1998 Plaintiff filed a seven-count complaint against the School Board in this Court, alleging six counts of retaliation and one count

claiming a violation of the ADA for failure to accommodate Plaintiff's disabilities arising out of her December 1996 car accident. *See* 1998 Complaint, Ex. D to Defs.' Brief ¶¶ 12-13, 42-45.[1] On November 9, 1998, Judge Leonie M. Brinkema dismissed Plaintiff's complaint, finding that four of the retaliation counts were barred by the doctrine of *res judicata* and that all of the retaliation counts failed to state a claim. 1998 Opinion, Ex. A to Defs.' Brief at 9-14. Judge Brinkema also dismissed the ADA count for failure to exhaust administrative remedies. *Id.* at 15-16.

Following Judge Brinkema's decision, Plaintiff filed an EEOC charge accusing the School Board of violating the ADA. When that charge was dismissed, Plaintiff filed another lawsuit in this Court alleging that the School Board discriminated against her in violation of the ADA by failing to accommodate her back injury and retaliated against her because of her discrimination complaints. On May 10, 1999, Judge Brinkema dismissed the complaint, finding that Plaintiff's "failure to accommodate" claim was fatally deficient because she had not alleged that she was "otherwise qualified" to be a teacher and because she did not identify "any reasonable accommodations that would permit her to

---

[1] Where, as here, a court entertains a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Additionally, because the opinions are matters of public record, the Court may take judicial notice of them. *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986).

function as a teacher." 1999 Opinion, Ex. B to Defs.' Brief at 9. Judge Brinkema also noted that the discrimination about which Plaintiff complained had no relationship to her disability. *Id.* at 9-10. Finally, the Court dismissed Plaintiff's retaliation claims on the basis of *res judicata* and because the alleged retaliatory acts did not constitute an adverse employment action. *Id.* at 12-13.

Then, in September 2003, Plaintiff filed another lawsuit against the School Board. In a March 3, 2004 opinion, Judge Gerald Bruce Lee dismissed Plaintiff's Title VII, ADA, and retaliation claims for failure to state a claim, and dismissed Plaintiff's other claims on the grounds of *res judicata* and timeliness. *See* 2004 Opinion, Ex. C to Defs.' Brief at 11-22. Due to Plaintiff's history of filing frivolous complaints and previously-adjudicated claims against the School Board, Judge Lee enjoined Plaintiff from filing future lawsuit*s* against the School Board without prior leave of Court. *Id.* at 23.[2]

Plaintiff filed the instant Complaint against the School Board and its Chairman, Daniel G. Storck (collectively, "Defendants"), on January 28, 2008. The Complaint contains few factual allegations, but alleges three claims: (1) violation of the ADA for "failing to properly accommodate" Plaintiff; (2)

---

[2] Plaintiff claims that she received permission to file the instant lawsuit from Magistrate Judge Theresa C. Buchanan and Judge Lee. Defendants do not challenge this assertion.

violation of the ADA for failing to hire Plaintiff; and (3) violation of the ADA for retaliating against Plaintiff by firing her on June 22, 2007. Plaintiff appears to modify this third claim in her memorandum in response to Defendants' Motion, stating that Defendants retaliated against her on various occasions between March 2005 and January 2006. Defendants moved to dismiss Plaintiff's Complaint on March 18, 2008. This matter is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which

require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Complaints drafted by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, while pro se litigants "cannot . . . be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in the law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Even in cases involving pro se litigants, district courts "cannot be expected to construct full blown claims from sentence fragments." *Id.* at 1278.

### III. Analysis

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, they argue that all of the claims against Daniel Storck must be dismissed because the ADA does not provide a cause of action against individual employees of a defendant employer. As to the School Board, Defendants argue that Count I, failure to accommodate, and Count II, failure to

hire, are barred by the doctrine of *res judicata*. Defendants further argue that Count II and Count III, retaliation, should be dismissed due to Plaintiff's failure to exhaust her administrative remedies under the ADA. Finally, Defendants contend that all three claims against the School Board must be dismissed for failure to state a claim. The Court will address each argument in turn.

### A. The Claims Against Daniel G. Storck

Plaintiff is suing Daniel Storck in his official capacity as Chairman of the School Board. *See* Pl.'s Compl. ¶ 6; Pl.'s Am. Mem. in Opp'n at 9. Generally, lawsuits against officers of an entity "represent only another way of pleading a suit against the entity of which the officer is an agent." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999). Consequently, where claims against an officer in their official capacity are essentially claims against the entity, they "should be dismissed as duplicative." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Here, Plaintiff presents claims and factual allegations against Daniel Storck that are identical to those brought against the School Board. Therefore, the claims against Mr. Storck in his official capacity as Chairman of the School Board are duplicative and should be dismissed.

Moreover, to the extent that Plaintiff is actually suing Mr. Storck in his individual capacity, "individuals who do not independently meet the ADA's definition of 'employer' cannot

be held liable under the ADA in making the employment decisions of a plainly delegable nature." *Bracey*, 55 F. Supp. 2d at 420 (quoting *Stephens v. Kay Management Co., Inc.*, 907 F. Supp. 169, 174 (E.D. Va. 1995)); *M.S. v. Fairfax County School Bd.*, 2006 WL 721372, at *3 (E.D. Va. Mar. 20, 2006)("The Fourth Circuit has held that the ADA does not permit actions against individual defendants who do not qualify as 'employers' under Title VII."). There is no dispute that the School Board, not Mr. Storck, was Plaintiff's employer. Thus, because he cannot be sued under the ADA, the Court will dismiss all of Plaintiff's claims against Daniel Storck.

### B. Counts I and II: *Res Judicata*

Defendants claim that Counts I and II against the School Board should be dismissed on the grounds of *res judicata*. The doctrine of *res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)(quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). The doctrine bars a plaintiff from asserting claims brought in a prior lawsuit if: (1) there was a former judgment that is both final and on the merits; (2) the parties in the former litigation and the present litigation are the same; and (3) the causes of action are the same. *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981).

Rule 41(b) of the Federal Rules of Civil Procedure provides that "a dismissal . . . other than a dismissal for lack of jurisdiction . . . operates as an adjudication upon the merits." Fed. R. Civ. P. 41(b). Courts in the Fourth Circuit have recognized that a dismissal under Rule 12(b)(6) for failure to state a claim qualifies as an adjudication on the merits for *res judicata* purposes. *See Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000); *Royal Meadows Stables, Inc. v. Colonial Farm Credit, ACA*, 207 B.R. 1003, 1008 (E.D. Va. 1997). Here, opinions by this Court in 1999 and 2004 dismissed Plaintiff's ADA claims for failure to state a claim. *See* 1999 Opinion & 2004 Opinion, Exs. B & C to Defs.' Brief. Therefore, the first prong of the *res judicata* test is satisfied. In addition, there is no question that the parties to those lawsuits and the parties to the present lawsuit are the same.

Furthermore, the cause of action stated in Count I of the instant Complaint mirrors the causes of action in Plaintiff's earlier cases. Under the ADA, only disabled persons who are "qualified" for the job in question may state a claim for discrimination. *Tyndall v. National Educ. Centers, Inc. of California*, 31 F.3d 209, 212 (4th Cir. 1994). The ADA defines a "qualified person with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To

meet this standard, a plaintiff must demonstrate (1) that she can perform the essential functions of the job at issue, and (2) if not, that a reasonable accommodation by the employer would enable her to perform those functions.  *Tyndall*, 31 F.3d at 213.  In the 1999 Opinion, this Court dismissed Plaintiff's ADA claim by finding that Plaintiff's allegation that her disability prevented her from returning to a teaching position meant that she was not "otherwise qualified" for the job.  1999 Opinion, Ex. B to Defs.' Brief at 9.  Similarly, in the 2004 Opinion this Court dismissed Plaintiff's ADA claim where she repeatedly claimed that she could not perform her duties as a teacher, finding that "the ADA was not designed to protect employees who cannot perform the essential functions of the job at issue."  2004 Opinion, Ex. C to Defs.' Brief at 18.  In this lawsuit, Plaintiff again complains that she "is unable to perform the functions required for teaching" due to her disability.  Ex. 4 to Pl.'s Compl.  In other words, Plaintiff is bringing the identical claim to the one that was brought and adjudicated on the merits in the earlier litigation.

The similarities between the causes of action do not end there.  To make out a *prima facie* case of failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation the employee could perform the essential functions of her position; and (4) the

9

employer refused to make such accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). In the 1999 Opinion, this Court noted that Plaintiff's request to be transferred to a new job was not a reasonable accommodation under the APA. 1999 Opinion, Ex. B to Defs.' Brief at 8-9 (citing *Mannell v. American Tobacco Co.*, 871 F. Supp. 854, 858-59 (E.D. Va. 1994)). Again in 2004, this Court rejected Plaintiff's demand that the School Board accommodate her by giving her a non-teaching position, which the Court said was "simply not the law." 2004 Opinion, Ex. C to Defs.' Brief at 20. In this lawsuit, Plaintiff seeks identical relief: for the School Board to accommodate her by placing her in a non-teaching, administrative position. *See* Pl.'s Compl. ¶ 18(g); Ex. 4 to Defs.' Brief. As this Court has previously held, that relief is unobtainable under the ADA.

Moreover, Plaintiff's failure to hire claim in Count II is essentially her failure to accommodate claim restated. Plaintiff alleges that the School Board violated the ADA by failing to hire her "to any of the administrative positions recommended by her treating specialist physicians and positions she applied for with the defendant." Pl.'s Compl. ¶ 11. Plaintiff explains that this claim arises out of the School Board's failure to look beyond her teaching position and to hire her for a different job "as a reasonable accommodation." Pl.'s Am. Mem. in Opp'n at 11. Where, as here, two suits or two claims

arise out of the "same core of operative facts," courts must not "allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Pueschel*, 369 F.3d at 355 (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991)). This Court has twice adjudicated the question of whether the School Board was obligated to place Plaintiff in an administrative position, and Plaintiff's failure to hire claim – just like her failure to accommodate claim – is simply another attempt to litigate this claim.  Therefore, because Plaintiff's claims for failure to accommodate and failure to hire were previously litigated and decided on the merits, the Court will dismiss Counts I and II as barred by the doctrine of *res judicata*.

### C. Count III: Exhaustion of Administrative Remedies

Defendants argue that Counts II and III should be dismissed for failure to exhaust administrative remedies. Because Count II will be dismissed on *res judicata* grounds, the Court need not address Defendants' exhaustion argument with respect to that Count.  The Court will, however, address Defendants' exhaustion argument regarding Count III.

The ADA incorporates the remedies and procedures set forth in Title VII.  *See* 42 U.S.C. § 12117(a); *Meyer v. Bell*

*Atlantic Network Servs., Inc.*, 57 F. Supp. 2d 303, 304-05 (E.D. Va. 1999). These procedures require a plaintiff to file an administrative charge with the EEOC before filing a discrimination suit based on those claims. 42 U.S.C. § 2000e-5(f)(1). Importantly, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" may be brought in a subsequent ADA lawsuit. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996)(citations omitted). However, a plaintiff claiming retaliation for filing an EEOC charge need not put that retaliation claim through the administrative process. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).

Here, Plaintiff points to her EEOC charge filed August 4, 2005, and amended in November 2005 and January 2006, as the protected activity for which Defendants allegedly retaliated. *See* Exs. 3, 4, & 5 to Pl.'s Compl.; Pl.'s Am. Mem. in Opp'n at 2, 11-12. Therefore, under *Nealon* Plaintiff was not required to file an additional EEOC charge before filing this lawsuit, and the Court will reject Defendants' argument.

### **D. Count III: Failure to State a Claim**

Finally, Defendants move to dismiss all three claims against the School Board for failure to state a claim. Because Counts I and II will be dismissed on *res judicata* grounds, the Court need not address the merits of those claims. The Court

will, however, address the merits of Plaintiff's retaliation claim.

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action. *Rhoads*, 257 F.3d at 392. As the Court mentioned above, Plaintiff's protected activity is her EEOC charge, filed in August 2005 and amended in November 2005 and January 2006. In her Complaint, Plaintiff states that her June 22, 2007 termination was the adverse employment action that she suffered for filing her EEOC charge. However, in her memorandum in opposition, Plaintiff claims "she made an error by placing the June 2007 date of termination" in her Complaint and argues that she suffered adverse employment actions in March 2005, November 2005, and January 2006. Pl.'s Am. Mem. in Opp'n at 2. Specifically, Plaintiff contends that she was fired in March 2005, has been denied short term disability benefits since March 2005, was recommended to be fired in November 2005, and was actually fired in January 2006, all as a consequence of her EEOC charge. *See id.*; Exs. 3, 4, & 5 to Pl.'s Compl.

Of course, any action that took place prior to August 4, 2005 cannot constitute an adverse action because it occurred prior to the protected activity. In addition, the alleged adverse action from November 2005 – a recommendation from the

13

Director for the Office of Employee Performance for the School Board to the Superintendent of the School Board that Plaintiff be terminated – does not qualify as an adverse employment action. *See Watson v. Guitierrez*, 2006 WL 1647116, at *5 (E.D. Va., June 6, 2006)(holding that the recommendation of termination does not qualify as an adverse employment action)(citing *Krane v. Capital One Services, Inc.*, 314 F. Supp. 2d 589, 611 (E.D. Va. 2004)).

Thus, only Plaintiff's termination in June 2007 and her purported termination in January 2006 may qualify as adverse employment actions. Accepting, *arguendo*, the January 2006 date as the actual date of termination, more than two months elapsed between the November 2005 amendment and the January 2006 termination, and roughly five months elapsed between the initial filing of the EEOC charge and termination. Courts have found that large temporal gaps, without other evidence, are insufficient to establish an inference of causation between the adverse employment action and the protected activity. *See Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751, 760-61 (3d Cir. 2004)(finding that a lapse of two months' time between the plaintiff's protected activity and his termination, absent any other evidence, was insufficient to establish a causal link between the two events); *see also King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)(finding that a two and one-half month lapse between the protected activity and the adverse action "is sufficiently long so as to weaken

14

significantly the inference of causation between the two events"); *Rizkalla v. Eng'g Mgmt. & Integration, Inc.*, 2006 WL 4459434, at *5 (E.D. Va. Aug. 29, 2006)(holding that a gap of slightly more than three months between the protected activity and the adverse action tended to negate the inference of discrimination), *aff'd*, 222 Fed. Appx. 262, 2007 WL 954206 (4th Cir. Mar. 27, 2007).  In light of the fact that Plaintiff pleads no other facts supporting her retaliation claim other than temporal proximity, the gaps in time that exist here compel the Court to conclude that Plaintiff has not pled sufficient facts alleging a causal connection between the adverse employment actions and the protected activity.[3]  As such, Plaintiff's retaliation claim fails as a matter of law, and the Court will dismiss Count III.

### IV.  Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order will issue.

May 15, 2008                           _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                       UNITED STATES DISTRICT COURT JUDGE

---

[3] In addition, using the January 2006 amendment as the applicable protected activity would not help Plaintiff's claim.  First, the January 2006 amendment took place after Plaintiff's alleged termination in January 2006, so there can be no causal connection between those two events.  Second, because the January 2006 amendment is so remote in time from the June 2007 termination, there is no causal connection between those events either.

15